ARNOLD ET AL. V. WOODWARD.

1. A JUDGMENT IN FAVOR OF A LANDLORD AGAINST HIS TENANT FOR POSSESSION, NO BAR TO AN ACTION BY AN HEIR OF THE TENANT AGAINST THE LANDLORD UNDER A CLAIM OF TITLE.— A judgment in ejectment, by a landlord against his tenant for breach of the conditions of the lease, will not bar a subsequent action against the landlord by an heir of the tenant to recover the land, on the ground that a patent therefor was issued to the tenant during his tenancy, as in the former action the tenant was estopped to deny his landlord's title.

2. THE POSSESSION OF THE LANDLORD RECOGNIZED BY THE INSTITUTION OF SUIT BY THE HEIR.— The bringing of the action by the heir of the tenant is a sufficient recognition that the relation of landlord and tenant had been terminated, so as to entitle the heir to sue for possession under the patent, where the landlord was, and had been for years, in possession under the judgment in the former action.

3. CONSTRUCTION OF THE CLAUSE, "A CLAIM AND COLOR OF TITLE MADE IN GOOD FAITH."— Under General Statutes, section 2186, requiring "a claim and color of title made in good faith" as ground of adverse possession, one cannot hold adversely to another when he knows that his entry in the land-office has been set aside or disregarded, and a patent has issued to the person against whom he claimed an adverse holding.

4. CONSEQUENCE OF FAILURE TO ALLEGE SPECIAL DAMAGE IN EJECTMENT.— Where the complaint in ejectment contains no allegation of special damage, the damages recoverable cannot include the value of the use of the premises by defendant.

*Appeal from District Court of Chaffee County.*

THE undisputed facts in this case are as follows: In the year 1869, Charles G. Arnold first occupied the lands in controversy, having entered the same for pre-emption in the United States land office at Fairplay, Colo. He proved up on them, and on March 31, 1874, paid the sum of $200 therefor, taking a receipt in full, describing the lands, from the receiver of the land office. During the year 1874 Arnold leased the premises to one James A. Woodward, who, after entry, and while in possession as such tenant, filed his application for said land in the United States land-office at Fairplay, for the purpose of acquiring title thereto in his own right. Thereupon Arnold brought an action of ejectment under the lease for condition broken for the premises against Woodward, in the district court, and in 1875 recovered judgment, and was thereby restored to the actual possession of the land. Woodward died about this time; but his widow and heir, Mary S. Woodward, continued the litigation. She procured herself to be substituted as defendant in place of her deceased husband, paid the costs in the action, and obtained a new trial.

In March, 1877, a patent to the land was granted by the United States to the heirs of Woodward, deceased, upon the application made by him while he was the tenant of Arnold. The record does not disclose what became of Arnold's pre-emption claim.

On the second trial, which occurred in September, 1877, Mrs. Woodward was permitted, against the objection of Arnold, to introduce in evidence the patent to the Woodward heirs, and upon this proof a verdict and judgment were rendered in her favor for possession of the premises; but, before possession was restored to her, Arnold appealed the case to this court. In November, 1878, that judgment was reversed on the sole ground that neither Woodward nor his heirs could in that suit

make use of the patent acquired by virtue of steps which he had taken while he was a tenant of Arnold to defeat the title of his landlord. The cause being remanded to the district court, no further action has ever been taken therein; and Arnold, in the mean time, has remained in possession of the premises, paying the taxes thereon.

In March, 1883, this present action was commenced by said Mary S. Woodward, as plaintiff, against said Charles G. Arnold, as defendant, to recover possession of the same premises described in the former action. The defendant Arnold, among other things, pleaded the commencement of the former suit, the proceedings thereunder, the reversal thereof by this court, and its continued pendency, peaceable possession, and payment of taxes, as an answer to the action. On this trial in the district court the plaintiff read in evidence the same patent as on the second trial of the former suit. The opinion of this court (*Arnold v. Woodward*, 4 Colo. 249) and the bill of exceptions in the original case were admitted in evidence without objection; and it was also admitted that the plaintiff is the sole heir of James A. Woodward, deceased, and that she resides in Chaffee county, Colorado, and that defendant is in possession of the land in controversy. Upon this proof of title alone, the facts hereinbefore stated being admitted or proved without contradiction, a finding and judgment were rendered in favor of plaintiff by the court for the possession of the property. The defendant Arnold appeals again to this court.

Messrs. PATTERSON & THOMAS, for appellants.

Messrs. WELLS, McNEAL & MACON, for appellee.

RICHMOND, C. The present and former actions between these parties relating to the land in controversy are dissimilar. In the former, Arnold was plaintiff, and, though he proceeded in ejectment, yet his suit was based upon the lease to Woodward, and possession was claimed for

condition broken. The right to possession, as between landlord and tenant, was alone in controversy. Woodward's possession as tenant at that time under the lease being then admitted, the question of title was not and could not be litigated; for "the tenant is estopped to deny the landlord's title." By entering upon and occupying the premises under the lease, Woodward and his heir were estopped from questioning Arnold's ownership, and from introducing the patent which during the tenancy had been acquired by Woodward from the United States. The present action, on the other hand, was instituted by Mrs. Woodward in ejectment against Arnold to try the title to the premises. The lease was ignored in the complaint, and the action brought upon the assertion of a fee-simple ownership under the patent. It is therefore apparent that, besides a reversal of the position of the parties, the pleadings, the issues made, the relief sought, and the evidence admissible in the two cases were radically different. A judgment for Arnold in the former suit would not estop Woodward from prosecuting the present suit. It follows, therefore, that that suit could not bar or abate this one. 6 Wait, Act. & Def. 499, and cases; *Vance v. Olinger,* 27 Cal. 358; *Screw Co. v. Bliven,* 3 Blatchf. 240; *Osborn v. Cloud,* 23 Iowa, 104.

It is said, however, that Mrs. Woodward could not rely upon her patent title until the property held under the lease had been surrendered, and thus the relationship of landlord and tenant terminated. This proposition was announced by the court, on appeal, in the former suit. *Arnold v. Woodward,* 4 Colo. 249. Upon the reversal and remanding of that cause, Mrs. Woodward acquiesced in the conclusion then pronounced by this court, and took no further steps in that suit. Her sole defense to that action had been declared entirely unavailing, and Arnold was in position to take his judgment, or perhaps to dismiss his action; for he held the actual and exclusive possession, having obtained the same as a result of the first trial. At the time of commencing the present action,

Mrs. Woodward was not, and for years had not been, in possession of the premises. She did not assert, and for years had not in any way asserted, her right to such possession as a tenant or otherwise. By commencing the present action to try the title she satisfied fully, if she had not done so before, the requirement concerning a surrender of property. The institution of this suit is clearly a recognition by Mrs. Woodward of the fact that the relation of landlord and tenant no longer exists; also that she is not in possession, but that Arnold is. The law commands no foolish or needless acts. To say that, under the circumstances, it was her duty, before commencing this suit, to notify Arnold that she voluntarily surrendered a possession which she did not have, would be to command an idle and useless ceremony; or to hold that, as a condition precedent to her assertion of the present right of action, she should have withdrawn her answer, and notified the court below that judgment might be taken against her in the former suit, would be to require a proceeding equally superfluous; she did not control that suit, and its result was a matter of indifference to her. We think that plaintiff, having a patent from the United States, was entitled to assert her rights thereunder in the present suit.

It is scarcely necessary to add that there is no inconsistency between this decision and the decision in *Arnold v. Woodward, supra.* That case simply held that, since the patent in question was obtained while Woodward was a tenant under the lease, he could not rely upon it in defending the action of Arnold as lessor or landlord, for possession against him as lessee or tenant; and that he was bound to surrender, and thus terminate the tenancy, before he could be permitted to assert his title. Holding, as we now do, that there has been a surrender of such possession and a termination of the tenancy, the obstacle to the assertion of ownership under the patent has been removed.

The claim of a bar by the statute of limitations (Gen.

St. § 2186) is not well taken. Arnold's entry in the land-office had been set aside or disregarded, and the patent from the United States had issued to Woodward. Such issuance of the patent necessarily indicates that all steps required in connection therewith were duly taken. *Arnold v. Woodward, supra.* During a large part of the period covered by Arnold's alleged adverse holding, these facts existed and were known to him. Under the circumstances, there was not such a "claim and color of title made in good faith" as laid the foundation for an application of the statute. *Spellman v. Curtenius,* 12 Ill. 415.

The complaint in the present action contained no allegation of special damage; therefore the damages recoverable could not include the value of the use of the premises during their occupancy by Arnold. *Larned v. Hudson,* 57 N. Y. 151. It follows that the admission of testimony and the instruction to the jury on this point were erroneous.

For error in the measure of damages adopted, the judgment must be reversed.

REED and PATTISON, CC., concur.

PER CURIAM. For the reasons stated in the foregoing opinion the judgment is reversed.

*Reversed.*

MR. JUSTICE ELLIOTT (*dissenting*). There is one important particular in which I cannot concur in the able opinion of Mr. Commissioner RICHMOND. The correctness of the decision in *Arnold v. Woodward,* 4 Colo. 249, whereby that case was reversed and remanded, is conceded by counsel for appellee. They also admit that upon a retrial of that case the present plaintiff must inevitably be defeated. It is difficult to perceive how her cause is improved by the present action. It will be observed that the former suit is between the same parties

as this, it is of the same nature, it concerns the same subject-matter, the same relief is sought, and it is still pending. Mrs. Woodward seeks in both actions to establish the same title upon the same evidence. It is true, the parties occupy reverse positions as plaintiff and defendant; but the present plaintiff, if successful *as defendant* in the former suit, would be entitled to the same relief as if successful *as plaintiff* in the present action. R. S. 1868, ch. 27, § 30. A more complete identity of parties, nature, and cause of action, subject-matter, relief and evidence could hardly arise.

It is claimed, however, that the relation of landlord and tenant no longer exists, and that, in this respect, the present action differs from the former one. In the former opinion it is said that the steps taken by Woodward to acquire title from the United States during his tenancy under Arnold were of necessity hostile to his landlord's title, and that, before he could assert any rights under a title thus acquired, he must surrender possession of the premises. From this and other language in the opinion it is insisted that, though a tenant may not use a superior title acquired by his own act hostile to the title of his landlord during the tenancy as a defense to a suit *brought by his landlord* against him for possession, yet that he may, by *surrendering possession,* use such superior title in an action thereafter *brought by himself* to regain possession from his former landlord. Conceding the correctness of this proposition, it avails the plaintiff nothing in the present action; its terms are not broad enough to include a party in her situation. Plaintiff has never *surrendered* possession of the premises in any proper sense of the term. On the contrary, she has strenuously resisted the landlord's efforts to regain possession; and, though driven from the field by legal process, has steadily maintained an attitude of hostility. So long as the former action remains pending and undisposed of, it is in law a continuing

menace to the landlord's possession. A *surrender* implies a yielding up of the lesser estate by the tenant to him who has the immediate estate in reversion or remainder, whereby the lesser estate is merged in the greater by *mutual agreement.* Bouv. Law Dict. The surrender must be voluntary, or, at least, the controversy concerning the possession must be fully terminated before the tenant can be permitted to assail the landlord's title by means of a title inconsistent therewith, acquired through hostile action on his part, while the tenancy continued.

While the former action remains pending and contested, it cannot be well said that plaintiff has surrendered possession; but her *status* in respect to the property must be considered the same in legal effect as if she had remained in possession while the case was being litigated through the various courts. In actions of ejectment under our practice the party in possession may retain it until final judgment, and during the prosecution of an appeal; and if a change is effected through legal process before the final termination of the litigation, it does not affect the rights of the parties. R. S. 1868, *supra.*

But it is said that plaintiff has acquiesced in the conclusion pronounced by this court on the former appeal. In what manner has she manifested this acquiescence? The only final judgment ever pronounced against her was on the first trial of the former action. That judgment she caused to be *vacated,* as she might do under the statute then in force (R. S. 1868, ch. 27, § 26), and upon the second trial the judgment was in her favor. This court reversed the latter judgment and remanded the cause, but did not enter final judgment nor direct the district court so to do. Since then no action whatever has been taken in the cause by either party, and there is no final judgment therein remaining of record anywhere.

It is urged that the lapse of time during which Mrs. Woodward remained out of possession, forbearing to assert any claim to the premises, is a circumstance strengthening her right to maintain this action before the termination of the former one. A most novel doctrine, that a claim is to be received with more favor because it is stale! Great virtue is also claimed for the commencement of this action as an evidence of acquiescence and surrender on the part of plaintiff. A singular way to manifest acquiescence in defendant's claim, to commence a fresh action against him for the same cause before the former action is terminated! The surrender of possession spoken of in the former opinion must mean something more than a mere physical change of possession, — as the putting of Woodward out and the putting of Arnold in, — for that kind of a change had already taken place before the second trial of the former action occurred; and yet it was held erroneous to admit the Woodward patent in evidence against Arnold on that trial, and the judgment based thereon was reversed for that very reason. How, then, can the present judgment be sustained on the same evidence? As we have seen, the former action in all its aspects is precisely the same as the present. Since long before the second trial of the former action the possession of the property and the attitude of the parties in relation thereto have remained *in statu quo*. No change whatever has occurred. Mrs. Woodward has not given or offered any deed of surrender; she has not moved the former action to trial or judgment, nor attempted so to do; she has not withdrawn her answer, nor offered to allow judgment to be taken therein; she has in no way acknowledged the landlord's original title, nor done any act signifying her acquiescence therein. Her attitude is the same as it was when she paid the costs of the first suit, and obtained a new trial. Everything remains in the precise condition it was when the second trial was

entered upon. The cause stands contested upon the record, the same as if there had never been a trial. In this view, the matter is too plain for argument that, since Mrs. Woodward confessedly cannot introduce the patent to defeat the former suit pending, she cannot, without in some way disposing of the obstacle thereto, maintain a fresh action against Arnold for precisely the same cause, by the introduction of the self-same patent. It would be a strange anomaly in our jurisprudence if, where two actions in ejectment are pending at the same time, in the same court, involving the same title to the same land, and between the same parties, occupying the same position in respect to the property in the one case as in the other, one party might recover the possession in one action, and the other party recover it in the other action, upon precisely the same evidence. If this be allowable, when and where will the litigation end? If plaintiff may oust defendant by the present action, what is to prevent defendant from regaining possession by prosecuting the former suit to judgment, since it is conceded that plaintiff cannot defend against it? In 1 Bac. Abr. 29, it is said: "The law will not allow two *quare impedits* to be brought for the same presentation, viz., a second by the defendant against the plaintiff, when there is one pending in the court by the plaintiff against the defendant; *et sic in brevi de partitione*, because the defendant can have the same remedy on the first writ as he could on a second. The law is so watchful against all vexatious suits that it will neither suffer two actions of the same nature to be pending for the same demand, nor even two actions of a different nature." R. S. 1868, ch. 27, § 30; Tayl. Landl. & Ten. § 705; 6 Wait, Act. & Def. 496 *et seq.; Ward v. Gore*, 37 How. Pr. 119; *Parker v. Colcord*, 2 N. H. 36; *Tracy v. Reed*, 4 Blackf. 56; *Hart v. Granger*, 1 Conn. 154; *Colt v. Partridge*, 7 Metc. 575; *Ryerson v. Eldred*, 18 Mich. 12; *Doe v. Baytup*, 30 E. C. L. 105.

It follows from the foregoing that, under the pleadings and proof, the former suit pending should be held sufficient to abate the present action, and that the judgment by the district court should be reversed for that reason.

*Reversed.*